**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____  :
                                :
SAMMY JEFFERSON,                :
                                :      Civil Action No. 03-1414 (WJM)
              Petitioner,       :
                                :
         v.                     :
                                :          OPINION
LYDELL B. SHERRER, et al.,      :
                                :
              Respondents.      :
_____  :
```

**APPEARANCES:**

SAMMY JEFFERSON, Petitioner Pro Se
#249151
Northern State Prison
P.O. Box 2300
Newark, New Jersey 07114

PAULA T. DOW, ESQ.
Essex County Prosecutor
Essex County Courts Building
Newark, New Jersey 07102
Attorneys for Respondents

**MARTINI, District Judge**

This matter is before the Court on petitioner Sammy Jefferson's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.  <u>BACKGROUND</u>

Petitioner, Sammy Jefferson ("Jefferson"), is presently confined at the Northern State Prison in Newark, New Jersey, serving a 25-year prison sentence with a 10-year period of parole ineligibility for his conviction on assault and carjacking offenses.

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference under 28 U.S.C. § 2254(e)(1), will simply reproduce the New Jersey Appellate Division's factual recitation, as set forth on direct appeal:

> On March 8, 1999, 69 year-old Etta Rizzuto arrived at the Orange Post Office at approximately 6:30 a.m.  She parked her Mercury Grand Marquis near the mailboxes on the street, left her keys in the car, and got out of the vehicle to mail some letters.  After mailing the letters, she saw Jefferson, who had been in an adjacent plaza, running towards her vehicle.  Rizzuto tried to outrun Jefferson to her car, but to no avail.  Jefferson entered Rizzuto's vehicle, and shut the door.  Rizzuto tried to stop Jefferson by pulling on the door and screaming at him to get out of the car, but Jefferson hit her with the driver's side door, knocking her to the ground.  Jefferson then drove off in Rizzuto's vehicle.
>
> Off-duty East Orange Police Officer Larry Martin was also at the Orange Post Office on the morning in question.  Martin was parked on the same side of the street as Rizzuto about five or six car-lengths behind her vehicle.  He observed Jefferson run towards Rizzuto's vehicle.  He observed Jefferson get into the car, Rizzuto's attempt to pull the door open, and Jefferson push the door into Rizzuto, knocking her to the ground.  He witnessed Jefferson drive off in Rizzuto's vehicle.
>
> After checking on Rizzuto, Martin pursued Jefferson.  While in pursuit, he called the Orange Police Department on his

2

cell phone.  A tape of this conversation was played for the
jury.  Martin followed Jefferson from the City of Orange to
East Orange and back to Orange.  When he lost sight of
Jefferson briefly in East Orange, Martin deduced that
Jefferson had pulled into one of the driveways on South
Harrison Street.

After checking the driveways for approximately thirty
seconds, Martin pulled into the parking lot of a men's shop,
and spotted Jefferson in Rizzuto's vehicle in an adjacent
parking lot.  Though there was a gate separating the two
lots, Martin was close enough to identify Jefferson.  Martin
later identified Jefferson at trial as the person he
observed in the parking lot.  Jefferson once again drove
away in Rizzuto's vehicle, and Martin continued in pursuit
until Orange Police took over.

Orange Police Officer Kenneth McGuire testified he pursued
the suspect vehicle.  When he activated his patrol car's
emergency lights, Jefferson sped up.  McGuire estimated
Jefferson was traveling approximately twenty miles-per-hour
over the speed limit in a residential area.  Jefferson
stopped the car at 196 Hickory Street, and jumped out.
McGuire chased Jefferson on foot.

Orange Police Sergeant Hakeem Simms came in contact with
Jefferson as he exited the vehicle on Hickory Street.  Simms
joined McGuire in the foot pursuit, and they chased
Jefferson through some back yards.  McGuire and Simms
observed Jefferson's face, and both were able to make in-
court identifications.  At some time, Jefferson removed his
jacket and threw it to the ground.  McGuire became winded
and lost sight of Jefferson.  McGuire then returned to the
discarded jacket and secured it for evidence.  Simms, who
never lost sight of Jefferson, eventually apprehended him.

Meanwhile, on his way back to the post office, Martin
noticed that the Orange Police had pulled the suspect
vehicle over on Hickory Street.  As he was talking to the
officers by the car, Simms and McGuire appeared with
Jefferson in custody.  Martin identified Jefferson to the
officers as the person involved in the carjacking.  Rizzuto
later identified Jefferson through a two-way mirror as the
person who had carjacked her.

Jefferson testified on his own behalf.  He stated that on
the day in question he was on his way to his employer's
business when he heard sirens nearby.  Concerned that the

3

sirens were for his fiance's ill mother, he began walking
towards the mother's house.  The police arrived and asked
him where he was going.  When he declined to answer, the
officers jumped out of the car and apprehended him.
Jefferson claimed the officers stomped on his legs.  He also
testified that he had been recently diagnosed as a diabetic
which rendered him unable to run or exert himself.

(Ra3, Superior Court of New Jersey, Appellate Division, per curiam Opinion, filed April 1, 2002).

Jefferson was tried by jury in a trial before the Honorable Peter J. Vasquez, on May 23 through 26, 2000.  The jury convicted Jefferson on one count of first degree carjacking, one count of the lesser included offense of simple assault,[1] and one count of second degree eluding the police.  The court sentenced Jefferson on June 16, 2000.  The court did not sentence Jefferson to an extended term as requested by the State.

Jefferson filed a Notice of Appeal on July 17, 2000.  The Appellate Division affirmed the conviction and sentence on April 1, 2002.  The Supreme Court of New Jersey denied certification on September 6, 2002.

Jefferson filed this federal habeas action on or about March 31, 2003.  This Court initially dismissed the petition without prejudice, as unexhausted, in an Opinion and Order dated April 11, 2003 (Docket Entry Nos. 2, 3).  On a motion for reconsideration, filed by Jefferson on June 11, 2003, the Court

---

[1] Jefferson had been indicted on one count of second degree aggravated assault.

4

vacated its April 11, 2003 dismissal Order and reinstated the petition.  On February 26, 2004, the respondents filed a motion to dismiss the petition for failure to comply with Rule 2(c) and (e) of the Rules Governing Section 2254 Habeas Cases in the United States District Court ("Habeas Rules").  This motion was denied by Order filed on December 17, 2004.  Respondents filed an answer to the petition, with the relevant state court record, on January 27, 2005.

## II.  CLAIMS FOR HABEAS RELIEF

Jefferson challenges his state court conviction and sentence on the following grounds: (1) petitioner's attire on the first day of trial created an unreasonable impression of guilt on the jury, denying him a fair trial; (2) the out-of-court identifications by Officer Martin were not disclosed to the defense before trial in violation of Brady v. Maryland, 373 U.S. 83 (1963); (3) the prosecutor's reference to petitioner's prior conviction for theft was highly prejudicial, and the trial court's curative instruction was insufficient to eliminate the prejudice to petitioner; (4) petitioner's sentence was excessive; (5) the indictment was defective because it was not signed by the grand jury foreperson.

The respondents contend that the last claim regarding the indictment was not exhausted in the state courts.  However, the

respondents assert that all of the claims alleged are substantively meritless.

### III.  EXHAUSTION REQUIREMENT

It is well established that a state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ." 28 U.S.C. § 2254(b)(1); see also 28 U.S.C. §2254(c); Rose v. Lundy, 455 U.S. 509, 510 (1982); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).  A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal), cert. denied, 532 U.S. 919 (2001); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the

law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.  Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  Id. at 277.

Here, the State asserts that one of the claims raised by Jefferson in this federal habeas petition is unexhausted. However, to the extent that the defective indictment claim was not exhausted in state court, this Court may opt to review the claim, and deny it on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  In this case, respondents have addressed most of petitioner's claims on the merits.  Thus, for the reasons discussed below, the Court will deny this petition on the merits, pursuant to 28 U.S.C. §

2254(b)(2), because "it is perfectly clear that an applicant does not raise even a colorable federal claim." Lambert, 134 F.3d at 514-15.

## IV.   STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999). Because Jefferson is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts. See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)). Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue. The first clause, or condition, is referred to as the "contrary to" clause. The second condition is the "unreasonable application" clause. Williams, 529 U.S. at 412-13. In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively

9

unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. Id. at 411. See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims. First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims. See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891. If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision. Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. Id. AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must

10

decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## V.  ANALYSIS

### A.  Petitioner's Attire at Trial

Jefferson's first claim alleges that he was denied a fair trial because his attire on the first day of trial created an unreasonable impression of guilt on the jury.

Before the jury was brought out at trial, the trial judge spoke to counsel about Jefferson's clothing:

THE COURT:     Have you spoken to somebody about clothes?

11

MR. DeBLIS[2]:    I called Michelle Grasso in the Public
Defender's, she's rummaging around for some clothes, I'll
call her back.

THE COURT:     Mr. Jefferson, you mind standing up for a
one second, please?

All right.  That's fine.  He has on gray -- tan, I guess tan
slacks which -- you can have a seat, Mr. Jefferson.  Work
boots.

MR. DeBLIS:    State boots.  They don't sell these on the
street, I know somebody will recognize them.  They don't
sell these on the street.  I'm not going to make myself a
witness in the case, but I have seen boots the same color
and work boots like that before.  Perhaps a close inspection
you may be able to identify them as state work boots.  To
me, from here, while I must admit I certainly seen them on
other people in your situation, I have also seen similar
colored work boots on many, many, many people.  Common,
common piece of clothing as are the tan pants.  While I
would do everything possible to see that different clothes
are obtained --

THE DEFENDANT: Yes.

THE COURT:     If for some reason we get a jury up here, and
you don't have different clothes, so long as the defendant
has perhaps another shirt, I do not believe the status of
the clothes would be such that it would immediately identify
him as a --

THE DEFENDANT: White, khaki, boots.

THE COURT:     Just hang on a second, Mr. Jefferson, you can
speak when it's your turn.

You would immediately identify him as a prisoner.  Certainly
Mr. Jefferson seeing so many people similarly dressed has an
observation that he makes that way, but he's not wearing a
jumpsuit of some iridescent color with a big black P on the
back, that instantly would denote somebody that's
incarcerated.

THE COURT:     Khaki slacks are something I own several

---

[2]  Jefferson's trial counsel.

pairs of.  I also own a pair of a work boots that same exact
color.  They are not something immediately that identify a
person in custody.  Certainly if you have one, or get you a
shirt over a -- other than a T-shirt.  If counsel do get it
for you, you are entitled to wear anything that's
reasonable, so we wouldn't interfere with that.  I just want
to make it clear for the record, whatever reason those
clothes do not arrive, we'll get you another shirt and go
the way you are.  Okay.

(1T[3] 10:21-12:19).

On direct appeal, the Appellate Division found that

Jefferson's attire was not identifiable as prison clothing:

It is clear that had he been so dressed, a reversal of his
conviction would be in order. [Estelle v. Williams, 425 U.S.
501, 506 (1976); State v. Maisonet, 166 N.J. 9 (2001)].
Rather, Jefferson's clothing consisted of a regular T-shirt,
tan slacks and work boots - clothes that are not exclusively
issued for prison use, and are common civilian clothing.
The judge satisfied himself on the point and we conclude

---

[3]  The respondents provided the relevant trial record as
follows:
    1T  -    Trial transcript of May 23, 2000
    2T  -    Trial transcript of May 24, 2000
    3T  -    Trial transcript of May 25, 2000
    4T  -    Trial transcript of May 26, 2000
    5T  -    Sentencing transcript of June 16, 2000

The respondents also provided the following documents from the
state court proceedings:

    Ra1  -    Petitioner's Direct Appeal Brief
    Ra2  -    State's Responding Brief
    Ra3  -    Appellate Division per curiam Opinion, filed on
              April 1, 2002
    Ra4  -    Petitioner's Notice of Petition for Certification
    Ra5  -    Petitioner's Letter in Support of Petition for
              Certification
    Ra6  -    State's Letter in Opposition to Petition for
              Certification
    Ra7  -    N.J. Supreme Court Order Denying Petition for
              Certification, dated September 6, 2002

13

there is no basis on the record to disturb the judge's ruling.

(Ra3 at pp. 8-9).

In <u>Estelle v. Williams</u>, the Supreme Court established that a defendant cannot be compelled to stand trial before a jury in identifiable prison garb.  The Court reasoned that to force a defendant to appear in such fashion would impair the presumption of innocence while furthering no vital State interest.  425 U.S. at 505.  In determining whether a defendant's due process rights have been violated, the court must consider whether the defendant is being made to appear before the jury in prison clothes as the result of actual state compulsion.  This determination is made on a case-by-case basis.  425 U.S. at 512-13.  Generally, if the accused does not formally object to appearing at trial in prison attire, then there is no state compulsion.  However, where the defendant, as here, has objected at trial to wearing such clothing, the court must determine whether the defendant's appearance was "inherently prejudicial".

> "All a federal court may do in such a situation is look at the scene presented to the jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over."

<u>Holbrook v. Flynn</u>, 475 U.S. 560, 572 (1986).

In this case, the trial court was satisfied that Jefferson's attire was not readily identifiable as prison garb, and in fact,

was common civilian clothing.  Efforts were made to have
Jefferson provided with a shirt to wear over his T-shirt, but
otherwise, the khaki pants and work boots worn by Jefferson were
not inherently prejudicial.  Accordingly, there was no unfair
impression of guilt presented to the jury that first day of
trial.  To the extent that petitioner now claims that a curative
instruction should have been made to the jury, this Court finds
that such an instruction would have drawn unnecessary attention
to Jefferson's attire, which otherwise would have appeared to the
jury to be common clothing and not a prison outfit.

     Thus, after reviewing the record, this Court concludes that
the state court decisions were not contrary to established
federal law.  The state courts reasonably determined that
Jefferson's clothing did not appear to be prison attire and was
not inherently prejudicial to him.  Therefore, Jefferson has not
demonstrated that the state court decisions, when evaluated
objectively and on the merits, resulted in an outcome that cannot
be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Accordingly,
this claim is without merit and will be denied.

B.  <u>Officer Martin's Out-of-Court Identification</u>

     Jefferson next asserts that his right to due process was
denied because the prosecutor did not inform counsel that Officer
Martin made an out-of-court identification of Jefferson and would
thus make an in-court identification.  Jefferson raised this

15

claim on direct appeal and asserts that the non-disclosure and admission of the identification at trial unduly prejudiced him. Jefferson cites <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).

At trial, Jefferson's attorney requested a mistrial, claiming unfair surprise, based on Martin's out-of-court identification.  Counsel alternatively moved to strike the identification.  The trial court denied the motion for a mistrial, finding that Martin's identification in and of itself, did not prejudice Jefferson, given all of the other evidence at trial, including other witness identifications.  However, the court did issue a curative instruction to the jury, given the fact that Martin's identification contradicted defense counsel's opening statement in which counsel represented that there were no identifications other than the victim's identification.  The instruction informed the jury to strike that portion of Martin's testimony which related to the identification he made of Jefferson while he was in the custody of the Orange Police officers.

On appeal, the Appellate Division rejected Jefferson's claim regarding the alleged non-disclosure and prejudicial impact of Martin's out-of-court identification:

> Counsel was provided with the record of the grand jury
> proceedings in which Martin identified Jefferson.  Martin
> was, after all, an eye witness to the crime itself and a
> participant in the chase that followed.  It was clearly
> probable that Martin would identify Jefferson given his
> observations at the post office and during that pursuit.  In

addition, the prosecutor discussed the issue of Martin's identification with defense counsel during the course of an unsuccessful <u>Wade</u> hearing about two weeks prior to the trial.  The prosecutor represented to the judge:

> Counsel and I engaged in two sets of conversations when this matter was before Judge Lester two weeks ago prior to the beginning of the <u>Wade</u> hearing, which essentially was not granted in totality, and counsel made inquiry of me as whether or not I intended to ask Officer Martin to make an in-court identification based on his observations.  I said I certainly intended to ask that question.  Counsel said there is nothing upon which he could base that.  I told counsel I disagreed with that, and that would be a question for the jury as whether or not Officer Martin's observations were sufficient which he could make an identification in this courtroom. [2T 81:16-82:3]

Considering these circumstances, it was not an abuse of discretion for the judge to rule that Martin's in-court identification was not such a surprise to Jefferson as to prejudice his defense.  <u>Benevenga v. DeGregorio</u>, 325 N.J. Super. 27, 32 (App. Div. 1999), <u>certif</u>. <u>denied</u>, 163 N.J. 79 (2000).

Furthermore, on the ground of prejudice to the defense, the judge struck Martin's out-of-court identification of Jefferson which occurred when he confirmed to the two arresting officers who had custody of Jefferson that "that's him, that's the guy that was in the car".  The judge, while he declined to grant a mistrial, carefully instructed the jury to disregard the testimony.  The Judge stated:

> In any event, before we took lunch, you heard Officer Martin who is testifying, testify that he identified the defendant Sammy Jefferson, when he was in route back to the Orange Post Office while the defendant was in the custody of the Orange Police Officers McGuire and Sgt. Hakeem Simms.  I charge you, that I am striking that portion of the Officer Martin's testimony.  You are not to consider it in any fashion for any reason.
>
> Now, what do I mean by that and how do you do that?  That means as far as you're concerned, the testimony never existed and you never heard it.  That's what I mean by that.

17

Now what do you do about it.  It's difficult for a
person to erase something from their memory bank, but
that's what you really have to attempt to and how I
suggest that you do it as follows: When you go back
into that jury room at the end of the case, you'll have
various items of evidence perhaps, you'll have the
testimony of all of the witnesses and all of the things
the witnesses said.  And if you take all of that
evidence, and analyze it to, or compare it to another
task, and the task I'm asking you to compare it to a
simple addition problem.  If you had a column of
numbers from 1 through 10, and your job, and that
represents evidence, and your job is to go back there,
and add up all those numbers, and come to what they add
up to -- all right.

That's what your job is when you go back and decide the
evidence.  Item Number 7, was that statement that I
just told you to disregard and not to consider.  So
when you're back there, you simply don't -- it does not
come into the equation.  If somebody should say, well,
didn't he such and such.  Somebody else say, oh, no,
Judge, I told you to strike that, that's out of here.
We simply do not use it in our equation, even some how
we remember it, you must remember not to consider it,
and use it in any way, shape or form.  [2T 93:24-95:11]

We are satisfied that this ample and forceful instruction
sufficiently cured any error in the admission of the
testimony.

(Ra3 at pp. 9-11).

At the outset, this Court finds that Jefferson has failed to

establish a <u>Brady v. Maryland</u> non-disclosure violation.  In order

to establish a <u>Brady</u> violation, the defense must demonstrate

that: (1) the prosecution failed to disclose the evidence; (2)

the evidence was of a favorable character to the defendant; and

(3) the evidence was material.  <u>Moore v. Illinois</u>, 408 U.S. 786,

794-95 (1972).  Jefferson fails on the first two conditions.  The

prosecutor disclosed the existence of an out-of-court

identification by Martin to defense counsel when the grand jury testimony was provided to counsel.  Martin had testified at the grand jury as to his out-of-court identification of Jefferson. Further, the issue again arose at the Wade hearing before trial. At that time, defense counsel acknowledged his awareness of the grand jury testimony.  These conversations with defense counsel were cited by the prosecutor at trial when the court considered the request for a mistrial based on unfair surprise.

Second, the out-of-court identification clearly was not favorable to Jefferson.  It was a personal, positive identification of petitioner as the culprit.  Thus, the Court finds no Brady violation.

Nevertheless, the trial court acknowledged the lateness of the disclosure and the fact that defense counsel's opening statement was in conflict with this portion of Martin's testimony.  Accordingly, the court struck that portion of Martin's testimony and forcefully instructed the jury that they were not to consider that testimony in deliberating the evidence in this case.  These measures served to eliminate any prejudicial impact from Martin's testimony on his out-of-court identification.

Federal courts presume that juries comply with the instructions given to them by the trial judge, including curative instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000); U.S.

v. Olano, 507 U.S. 725, 740 (1993).  There is nothing to suggest
that the jury would be disinclined to follow Judge Vasquez's
instruction to disregard the out-of-court identification
testimony by Martin.  Moreover, in denying counsel request for a
mistrial, the trial court found that there was no significant
prejudice to Jefferson because other witnesses had identified
him, and Martin's identification of Jefferson while he was in
custody of the Orange police officers was only one of the several
positive identifications in this case.  (2T 89:14-90:5).

    In addition, the Appellate Division found that the
instruction to the jury was forceful and sufficient to cure any
error.  Furthermore, the court found that overall, the "State's
case is so overwhelming, including four eyewitness
identifications - one of which was by a police officer who
witnessed the entire crime - that any error was not capable of
producing an unjust result." (Ra3 at pg. 11).  After reviewing
the record, this Court finds nothing to indicate that the state
court decisions on this issue was based on an unreasonable
application of the facts in light of the evidence presented at
trial.  Nor were the decisions contrary to established federal
law.  Jefferson has not demonstrated that the state court
decisions, when evaluated objectively and on the merits, resulted
in an outcome that cannot be reasonably justified.  Matteo, 171

F.3d at 891.  Accordingly, this claim will be denied for lack of
merit.

C.   <u>Reference to a Prior Conviction for Theft</u>

     In his third claim, Jefferson asserts that the prosecutor's
reference to Jefferson's prior conviction for theft was highly
prejudicial, and that the curative instruction given by the court
was inadequate to eliminate this prejudice.  Jefferson raised
this claim on direct appeal.

     Before trial, the court held a <u>Sands-Brunson</u>[4] hearing and
ruled that a "sanitized" version of Jefferson's criminal history
could be admitted into evidence.  In other words, a general
mention of prior convictions could be made, but the specific
nature of the offense(s) could not.  Thus, on direct examination
of Jefferson, defense counsel asked if petitioner had any prior
convictions without asking about the nature of the convictions.
However, on cross-examination, the prosecutor inadvertently
mentioned Jefferson's conviction for theft.  An immediate
objection was made, and Jefferson did not answer the question.
The court then gave a curative instruction to the jury, directing
them to disregard the prosecutor's question.  The court charged:

     Ladies and gentlemen, I sustained the last objection.  You
     are to - while there was no answer to the question, you're
     to disregard the question.  The question contained a
     reference to a particular crime, you're not to consider in

_____

     [4]   <u>State v. Sands</u>, 76 N.J. 127, 144 (1978); <u>State v.
Brunson</u>, 132 N.J. 377 (1993).

> any way for any purpose or in any form a particular crime
> that may or may not have been committed by the defendant at
> a prior date because we're - whether or not a particular
> offense was committed on a prior date in no way, shape, or
> form would be considered by you as to whether or not this
> person committed the crime for which he's on trial today.
> So again, you're not to consider that in any way, shape, or
> form as to whether or not defendant would be guilty of the
> crime for which he's on trial today.

(3T 178:11-25).

The Appellate Division rejected petitioner's claim of prejudicial error, finding that the instruction given by the trial court sufficiently cured the prosecutor's inadvertent reference.

> Any damage done to Jefferson by the prosecutor's question
> was mitigated by the fact that Jefferson never answered the
> question, the prosecutor immediately offered to withdraw it,
> and the trial court instantly issued a curative instruction.
> Perhaps under other circumstances, this reference would have
> warranted a reversal.  However, here, the State's case is so
> overwhelming, including four eyewitness identifications -
> one of which was by a police officer who witnessed the
> entire crime - that any error was not capable of producing
> an unjust result.

(Ra3 at pg. 11).

As noted above, Jefferson claims that he was denied due process because this inadvertent reference by the prosecutor was highly prejudicial, and no instruction by the court could have cured the error.  The Court finds this claim without sufficient merit to state a claim of constitutional magnitude.

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a

denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial. <u>Id</u>. at 220. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." <u>United States v. Young</u>, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

<u>Berger v. United States</u>, 295 U.S. 78, 88 (1935). "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone. Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence." <u>Young</u>, 470 U.S. at 7.

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on
> the basis of the evidence presented to the jury; and
> the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the
> Government's judgment rather than its own view of the
> evidence.

Id. at 18.

Thus, where a prosecutor's conduct during trial is challenged in habeas, "[t]he relevant question is whether the prosecutor's [conduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly, supra).  "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, there seems to be no question that the prosecutor's reference to petitioner's prior conviction for theft was improper and potentially prejudicial.  However, it is equally clear that immediate and sufficient curative measures were taken to cure that potential for prejudicial error.  Jefferson did not answer the question; the prosecutor offered to withdraw the question;

24

and the court gave a prompt curative instruction to the jury to disregard the question because any fact of a prior conviction cannot be used by the jury in determining whether or not the defendant was guilty of the offense for which he is being tried.

Moreover, there was overwhelming evidence of Jefferson's guilt shown at trial that clearly outweighed any prejudice to Jefferson.  The Appellate Division acknowledged the overwhelming evidence against Jefferson, which included four eyewitness identifications.  Thus, this Court concludes that any error by the prosecutor in making this inadvertent reference to a prior theft conviction was not of sufficient constitutional magnitude to warrant federal habeas relief.  Further, Jefferson has not demonstrated that the state court decision in this instance, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891. Accordingly, this claim will be denied.

D.   <u>Excessive Sentence Claim</u>

Jefferson next argues that his sentence was excessive because the court failed to consider any mitigating factors applicable in this case.  The Appellate Division ruled on direct appeal, as follows:

> We have carefully reviewed the record of Jefferson's
> sentencing.  The judge denied the state's motion for an
> extended term.  He then weighed the aggravating factors
> including Jefferson's extensive criminal history and the
> fact that the 69 year old victim, while not seriously
> injured, was bruised on the arm and leg.  He determined this

25

was clearly an N.J.S.A. 2C:15-2a(1) case, proscribing
infliction of bodily injury by the use of force in
connection with an auto theft.  He found no mitigating
factors, a conclusion with which we are in accord.  The
judge also considered the relevant cases discussing
sentencing in carjacking cases.  [state court citations
omitted].  The range of sentencing for a conviction under
N.J.S.A. 2C:15-2a(1) is between ten and thirty years with at
least five years of parole ineligibility.  The judge
concluded that the case merited sentencing at the "lower
range of the high end of the scale".  Given Judge Vasquez's
thorough analysis of both the law and the facts, we discern
no rational basis upon which to disturb the sentence.

(Ra3 at pp. 11-12).

Sentencing is generally considered a matter of state

criminal procedure, which does not fall within the purview of

federal habeas review.  Ervin v. Beyer, 716 F. Supp. 163, 165

(D.N.J. 1989); see also Johnson v. Beto, 383 F.2d 197, 198 (5th

Cir. 1967), cert. denied, 393 U.S. 868 (1968); U.S. ex rel.

Jackson v. Meyers, supra.  Indeed, absent some constitutional

violation, federal courts cannot review a state's alleged failure

to adhere to its own sentencing procedure.  Rorie v. Beard,

Civ.A.No. 04-3380, 2005 WL 825917, *5 (E.D. Pa. April 7,

2005)(citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir.

1988)).  Thus, a federal court will not reevaluate a sentence in

a habeas proceeding unless it exceeds the statutory limits.

Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d

Cir. 1984); see also Williams v. Duckworth, 738 F.2d 828, 831

(7th Cir. 1984), cert. denied, 469 U.S. 1229 (1985)("As a general

rule, federal courts will not review state sentencing

determinations that fall within statutory limits."); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975)("This Court will not upset the terms of a sentence within statutory limits unless so disproportionate to the offense as to be completely arbitrary and shocking").

Here, petitioner has not alleged that his sentence violates any federal constitutional rights.  An examination of the sentencing transcript shows that the court evaluated the aggravating and mitigating factors in a fair and reasonable manner based on the evidence proven at trial concerning the victim and her injuries, and the relevant statutory proscriptions regarding the carjacking offense.  Moreover, Jefferson's sentence plainly does not exceed the statutory limits, as stated by the Appellate Division in discussing the range applicable for the offense of carjacking.  Thus, Jefferson's claim is completely baseless, and is not subject to federal review.

E.   Defective Indictment

Jefferson finally claims that his indictment was defective because it was not signed by the grand jury foreperson.  This claim was not presented to the state courts for review.  Nevertheless, the Court finds that Jefferson's assertion completely fails to raise a colorable federal claim and may be dismissed under 28 U.S.C. § 2254(b)(2).

There is no federal constitutional right to a grand jury in state criminal proceedings, thus defects in a state grand jury process are not reviewable via a federal habeas petition unless they "rise for some other reason to the level of a denial of rights protected by the United States Constitution." Wainwright v. Goode, 464 U.S. 78, 86 (1983); see also Jelinek v. Costello, 247 F. Supp.2d 212, 278 (E.D.N.Y. 2003)("On its face, a state prisoner's claim that he was denied the procedural right to be indicted by a grand jury appears to implicate a right that is exclusively of state concern").  Jefferson has been unable to show how the alleged defect in the grand jury proceedings, that is, the failure of the grand jury foreperson to sign the indictment, deprived him of his constitutional rights.  The Sixth Amendment guarantees the right to be informed of the nature and cause of the accusation.  The Due Process Clause of the Fourteenth Amendment also requires reasonable notice and information of a specific charge against the accused.  Here, the indictment as issued served these goals.  "While the lack of a signature on the indictment does amount to error, the Supreme Court has explained that 'the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.'" United States v. Titchell,

261 F.3d 348, 3  (3d Cir. 2001)(quoting Hobby v. United States, 468 U.S. 339, 345 (1984).

Moreover, a claim as to the validity of a state indictment, as opposed to the fairness of a trial, does not typically rise to the level of a constitutional deprivation because any such claims alleging error in a state grand jury proceeding are rendered harmless by the subsequent guilty verdict by a petit jury.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  See also United States v. Mechanik, 475 U.S. 66, 72-73 (1986); United States v. Enigwe, 17 F. Supp.2d 390, 393 (E.D. Pa. 1998), aff'd, 248 F.3d 1131 (3d Cir. 2000), cert. denied, 531 U.S. 1185 (2001). Therefore, the petit jury's eventual conviction of Jefferson renders harmless Jefferson's unsupported claim of irregularities in the grand jury proceedings.  Accordingly, this claim for habeas relief will be denied.

## VI.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Jefferson demonstrates that he has failed to make a substantial showing of the denial of a constitutional right

necessary for a certificate of appealability to issue.  Thus,
this Court declines to issue a certificate of appealability
pursuant to 28 U.S.C. § 2253(c)(2).

### CONCLUSION

For the foregoing reasons, this Court finds that Jefferson's
§ 2254 habeas petition should be denied on the merits.  A
certificate of appealability will not issue.   An appropriate
Order accompanies this Opinion.


                    s/William J. Martini

          _____
          WILLIAM J. MARTINI
          United States District Judge

DATED:   October 25, 2005